# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

## RICARDO DE LEON TREJO
**Appellant,**

**v.**

## CHRISTOPHER BULLOCK, et al
**Appellee.**

# EMERGENCY MOTION FOR RELEASE PENDING APPEAL UNDER FEDERAL RULE OF APPELLATE PROCEDURE 8

Aaron Dendy, TN BPR# 34210
DENDY LAW, PLLC
1033 Demonbreun St., Ste. 300
Nashville, TN 37203
(615) 997-0006
aaron@dendy.law
TN BPR# 34210

Seamus Kelly, TN BPR# 32202
David Goldman, TN BPR# 35151
MUSIC CITY LAW, PLLC
1033 Demonbreun St., Ste. 300
Nashville, TN 37203
(615) 200-0682
seamus@musiccityfirm.com
david@musiccityfirm.com

# TABLE OF CONTENTS

I. JURISDICTIONAL STATEMENT AND PROCEDURAL NECESSITY FOR EMERGENCY RELIEF........................................................................................3

II. STANDARD OF REVIEW FOR STAY AND INJUNCTION PENDING APPEAL........................................................................................................ 6

III. THE DISTRICT COURT ERRED BY ORDERING A "REMAND" REMEDY FOR A DETENTION THAT WAS VOID AB INITIO........................................... 8

    A. A Finding of Unauthorized Detention Compels Release, Not Agency Re-Adjudication........................................................................................ 9

    B. The Status of "Qualified Alien" and its Legal Protections...........................11

    A. The Legislative Intent of 8 U.S.C. § 1641.........................................11

    B. The Impact of Status on the Liberty Interest................................... 12

IV. THE "HOLLOW REMEDY" AND THE SUBVERSION OF THE WRIT OF HABEAS CORPUS........................................................................................13

    A. In the Alternative, the "Remand" Remedy Proved Ineffective and Hollow..14

    B. The Binding Nature of Judicial Admissions in the Sixth Circuit................. 16

        a. The Borror Doctrine and Legal Finality.......................................16

        b. Implications of Sovereign Concessions........................................ 18

V. MATHEWS V. ELDRIDGE: THE "MEANINGFUL MANNER" REQUIREMENT...................................................................................................18

    A. The Private Interest: A Vetted Survivor's Liberty........................................ 19

    B. The Risk of Erroneous Deprivation via Erroneous Record.......................... 20

    C. The Government's Interest vs. Administrative Integrity................................20

VI. THE IRREPARABLE HARM OF UNCONSTITUTIONAL DETENTION...21

    A. The "Minimal Periods of Time" Doctrine.................................................. 21

    B. The Per Se Rule in Habeas Proceedings.......................................... 22

VII. CONCLUSION AND SPECIFIC REQUEST FOR RELIEF.........................23

CERTIFICATE OF COMPLIANCE.................................................................. 26

CERTIFICATE OF SERVICE..........................................................................27

## I. JURISDICTIONAL STATEMENT AND PROCEDURAL NECESSITY FOR EMERGENCY RELIEF

The Petitioner-Appellant, Mr. Ricardo De Leon Trejo ("Mr. De Leon"), is the father of three (3) U.S. citizen children, a twenty-five (25) year interior resident of the United States with no notable criminal history, and he has a *prima facie* approvable application for lawful permanent residence pending with the U.S. Citizenship and Immigration Service ("USCIS"). Furthermore, Mr. De Leon is the primary provider for his U.S. citizen partner and her three (3) U.S. citizen children–two of which suffer from severe autism. Through counsel, Mr. De Leon respectfully moves this Court pursuant to Federal Rule of Appellate Procedure 8(a)(2) for an emergency order directing his immediate release from the physical custody of the Respondents-Appellees pending the resolution of this appeal.

The procedural posture of this case is a testament to administrative overreach. On February 13, 2026, the District Court correctly identified that Mr. De Leon's detention under 8 U.S.C. § 1225(b) was a statutory fiction; however, the court committed a threshold legal error by failing to order Mr. De Leon's immediate discharge from an incarceration that was void *ab initio*. Under the Great Writ's traditional core, once a court determines "the imprisonment cannot be shown to conform with the fundamental requirements of law, ***the individual is entitled to his immediate release***." *Fay v. Noia*, 372 U.S. 391, 402 (1963); *see also*

*Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (holding the Writ's sole function is to "secure release from illegal custody").

By ordering a "remand" to the very agency that lawlessly imposed the detention, the court erroneously delegated the cure for a confirmed jurisdictional trespass back to the trespasser. Instead of vindicating Mr. De Leon's liberty through release (*see Fay*, 372 U.S. at 402 ("[v]indication of due process is precisely its [habeas's] historic office")), the Court ordered a remand for a bond hearing, effectively delegating the cure for a confirmed jurisdictional trespass to the very agency that lawlessly imposed it. *INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (observing that the writ's protections are "strongest" when "reviewing the "legality of Executive detention").

The danger of this remand remedy was immediately realized: the resulting hearing was a procedural sham that relied on erroneous records and ignored binding judicial admissions. On March 2, 2026, the District Court declined to enforce the substance of its judgment, ruling instead that technical statutory compliance satisfied the Writ despite the hearing's lack of integrity: classic form over substance. *See De Leon Trejo v. Bullock, et al.*, Doc. 39 (E.D. Tenn. Mar. 2, 2026). Because the District Court sanctioned an unauthorized detention as "compliance," moving first in that court for a stay or injunction has proven "impracticable" under Federal Rule of Appellate Procedure 8(a)(2)(A)(i).

Additionally, the District Court's suggestion that Mr. De Leon seek review from the BIA is a legal cul-de-sac. *De Leon*, Doc. 39 at 9. Requiring exhaustion is futile where the Board of Immigration Appeals (BIA) has already predetermined the legal issue. In *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 (BIA 2025), the agency commanded IJs to apply the very mandatory detention framework the District Court rejected. Furthermore, because this case is physically located in the Fifth Circuit, the BIA will forcefully apply *Buenrostro-Mendez v. Bondi*, No. 25-cv-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), which explicitly authorizes the mandatory detention of interior residents. Requiring Mr. De Leon to ask the BIA to overrule its own precedent and ignore Fifth Circuit law is a Catch-22 that renders the administrative process a nullity.

Moreover, Mr. De Leon is a "Qualified Alien" under 8 U.S.C. § 1641(c)(1)(B), a status reserved for vetted survivors of domestic abuse who have demonstrated a *prima facie* case for relief under the Violence Against Women Act (VAWA). Despite this status, and despite a formal admission by DHS Counsel that a bond would be sufficient to secure his presence, the agency has used a demonstrably false Form I-213 to justify his continued incarceration. This Court's jurisdiction under 28 U.S.C. § 2241 and the inherent power of the Court of Appeals to preserve the status quo are the only remaining safeguards against a total collapse of Article III oversight. *See St. Cyr*, 533 U.S. at 301-03.

Finally, and importantly, the underlying removal charges in this case are themselves legally bankrupt, making continued detention even more arbitrary. The documentary charge under 8 U.S.C. § 1182(a)(7)(A)(i)(I) is a border-focused mechanism that is inapplicable to a long-term interior resident encountered nearly thirty years after entry. *Marques v. Lynch*, 834 F.3d 549, 561-62 (5th Cir. 2016). Additionally, Mr. De Leon is statutorily exempt from the "presence without admission" charge under 8 U.S.C. § 1182(a)(6)(A)(ii) because his entry is substantially connected to the abuse USCIS has already found credible. When the government uses its administrative machinery to fabricate a justification for detention while ignoring mandatory statutory exemptions, the judiciary must intervene to protect Mr. De Leon's liberty.

For these reasons, the Court should **GRANT** Mr. De Leon's emergency motion pursuant to Federal Rule of Appellate Procedure 8(a)(2) and **ORDER** his **IMMEDIATE RELEASE** from the physical custody of the Respondents-Appellees pending the resolution of this appeal.[1]

## II. STANDARD OF REVIEW FOR STAY AND INJUNCTION PENDING APPEAL

In evaluating a motion for release or a stay pending appeal under Federal Rule of Appellate Procedure 8, the Sixth Circuit applies a four-factor test that

---

[1] Undersigned counsel conferred with the Respondents' counsels regarding this motion. Petitioner Bullock intends to oppose this motion. Petition Spangler takes no position regarding the motion.

balances the interests of the parties and the public: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. "[T]he factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Under this standard, Petitioner satisfies the likelihood of success prong by raising "serious questions going to the merits[.]" *Id.* at 153-54.

In the context of a habeas corpus petition where a District Court has already found a primary constitutional violation, the burden on the Appellant is mitigated by the existing finding of unlawful detention. The subsequent failure of the "remand" remedy heightens the need for an appellate-level intervention to ensure that Article III authority is not subverted by "safeguards theater"—the appearance of process without the reality of constitutional protection.

The irreparable injury factor is dispositive in cases involving physical incarceration. The Sixth Circuit has recognized that the loss of fundamental freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989). This logic applies with even greater force to the loss of physical liberty under the Fifth Amendment.

As detailed in the following sections, every day the Appellant remains in custody based on a sham hearing is a day of unconstitutional harm that cannot be remedied by a later victory on the merits.

**III.   THE DISTRICT COURT ERRED BY ORDERING A "REMAND" REMEDY FOR A DETENTION THAT WAS VOID AB INITIO**

"[W]here imprisonment is unlawful, the court 'can only direct [the prisoner] to be discharged.'" *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *Ex parte Bollman*, 4 Cranch 75, 136 (1807)).

On February 13, 2026, the District Court correctly held that Mr. De Leon was not an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b). *De Leon*, Doc. 30 (E.D. Tenn. Feb. 13, 2026). This finding was a jurisdictional determination: it established that the Respondents possessed zero authority to hold Mr. De Leon in mandatory, no-bond custody. Under these circumstances, the traditional and "great object" of the Writ is "the liberation of those who may be imprisoned without sufficient cause." *Ex parte Watkins*, 28 U.S. 193, 202 (1830).

Because the District Court correctly held that Mr. De Leon was not an "arriving alien," the Respondents possessed zero authority to hold him in mandatory, no-bond custody under 8 U.S.C. § 1225(b). Once the District Court determined that the Executive's assertion of power lacked any valid statutory basis, it became the "duty" of the court to release the prisoner. *Fay*, 372 U.S. at 423-24.

The Writ's sole function is to "secure release from illegal custody," not to provide a roadmap for the Executive to attempt a second, different statutory justification for the same illegal incarceration. *Preiser*, 411 U.S. at 484. Because the District Court correctly held that Mr. De Leon was not an "arriving alien," the Respondents possessed zero authority to hold him in mandatory, no-bond custody under 8 U.S.C. § 1225(b).

### A. A Finding of Unauthorized Detention Compels Release, Not Agency Re-Adjudication

Said another way, when a court finds that the Executive's assertion of power is a statutory fiction, it does not sit as a supervisor of administrative do-overs; it sits to "secure release from illegal custody." *Id*. at 484.

The Sixth Circuit's own history confirms that release is the definitive remedy for an unconstitutional incarceration. In *Ly v. Hansen*, this Court affirmed a district court order that granted the writ and directed the immediate release of a petitioner who had been held for an "unreasonably long time." 351 F.3d 263, 265 (6th Cir. 2003). Crucially, the Supreme Court held that for the habeas remedy to be constitutionally adequate under the Suspension Clause, the Article III judge must have the "power to release" the detainee. *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). By ordering a "remand" for a bond hearing instead of discharge, the District Court essentially outsourced its Article III power to an Executive agency that had already proven itself unwilling or unable to follow the law.

9

The District Court's finding was dispositive: it meant that from the moment of Mr. De Leon's arrest on January 27, 2026, Mr. De Leon was held under a legal framework that was inapplicable to him. Where a detention is void *ab initio* because it lacks a valid statutory basis, the only appropriate Article III remedy is to discharge the prisoner. *See, e.g., St. Cyr*, 533 U.S. at 301 (noting that the Writ's "protections have been strongest" when reviewing the "legality of Executive detention").

Because the District Court found the § 1225(b) framework inapplicable, the Respondents' authority to detain Mr. De Leon was a "legal nullity." *State of Alabama ex rel. v. Engler*, 85 F.3d 1205, 1207 (6th Cir. 1996) (citing *Hooks v. Hooks*, 771 F.2d 935, 950 (6th Cir. 1985)). The grant of a writ of habeas corpus has the immediate effect of "nullifying" the underlying justification for detention. *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006). For the habeas remedy to be constitutionally adequate under the Suspension Clause, the Article III judge "must have the power to order the conditional or unconditional release of the prisoner," not merely the power to suggest further administrative hurdles. *Boumediene*, 553 U.S. at 779. Because a federal court always retains jurisdiction to enforce its habeas judgments, it has the inherent authority to ensure that its judgment is "fully effectuated." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010). To require a

person held under a confirmed legal void to then "win" their freedom through a discretionary hearing is a subversion of the Writ's core purpose.

This failure of the "remand" remedy illustrates the danger of judicial hesitation. For these reasons, this Court should hold that once a habeas court finds the government's claimed detention authority to be a statutory fiction, the mandate for release is absolute.

## B. The Status of "Qualified Alien" and its Legal Protections

A critical and often overlooked element of this case is Mr. De Leon's status as a "Qualified Alien" under 8 U.S.C. § 1641(c). This is not a mere immigration category; it is a congressionally mandated status that carries specific legal protections and reflects a high level of federal vetting. 8 U.S.C. § 1641(c)(1)(B).

This status makes the "void ab initio" argument even more compelling. The Executive cannot simultaneously certify Mr. De Leon as a vetted, protected survivor of abuse through USCIS and then claim he is an "arriving alien" without rights through ICE. This "administrative incoherence" renders the initial decision to detain him without bond not just an error, but a jurisdictional trespass.

## A. The Legislative Intent of 8 U.S.C. § 1641

When Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) in 1996, it created the "Qualified Alien" status to distinguish between non-citizens who are eligible for federal benefits and those

who are not. 8 U.S.C. § 1641(b), (c). Crucially, Congress included "certain battered aliens" (VAWA self-petitioners) in this category. 8 U.S.C. § 1641(c)(1)(B).

This inclusion was a deliberate policy choice to protect victims of abuse from being forced to rely on their abusers or being deterred from seeking help by the threat of deportation. By achieving "Qualified Alien" status through a prima facie determination, Mr. De Leon has already established to the satisfaction of USCIS that he has been subjected to extreme cruelty and that there is a "substantial connection" between that cruelty and his need for legal protection. 8 U.S.C. § 1641(c)(1)(A).

### B. The Impact of Status on the Liberty Interest

Mr. De Leon's status as a "Qualified Alien" significantly alters the Due Process calculus. He is not a "clandestine entrant" in the eyes of the law; he is a vetted survivor with an approved Employment Authorization Document. *De Leon*, Doc. 33, Exhibit A at 108. His detention by one branch of DHS (ICE) while another branch (USCIS) has granted him protected status is a form of administrative incoherence that heightens the arbitrary nature of his incarceration. 8 U.S.C. § 1641(c)(1)(B).

By keeping a non-criminal "Qualified Alien" in detention, the government is actively subverting the very statutory scheme it is tasked with enforcing. 8 U.S.C. § 1641(c)(1)(B). This Court should recognize that Mr. De Leon's status creates a

strong presumption in favor of his release. This presumption is made irrebuttable by the Government's own admission: DHS Counsel explicitly requested a "high bond … to secure his presence in court," effectively conceding that Mr. De Leon is not the type of flight risk for whom detention is the only solution. *De Leon*, Doc. 37, Exhibit at 4. This arbitrary and capricious detention is precisely the type of lawless adjudication that the Writ of Habeas Corpus was designed to correct.

## IV. THE "HOLLOW REMEDY" AND THE SUBVERSION OF THE WRIT OF HABEAS CORPUS

When a federal court determines that an individual is being held in violation of the Constitution and orders a hearing as a remedy, that hearing is not a mere suggestion; it is a mandate for a process that comports with the highest standards of Due Process. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). A "remand" for a bond hearing that allows the government to present false evidence and ignore its own admissions is not a remedy—it is a nullification of the judicial power.

The Supreme Court has long maintained that a constitutionally required hearing "must be a real one, not a sham or a pretense." *Palko v. Connecticut*, 302 U.S. 319, 327 (1937). Where a judicial mandate is met with a check-the-box performance that preserves the underlying constitutional injury, the remedy is hollow and the Suspension Clause is violated. *Boumediene*, 553 U.S. at 777-79 (habeas corpus requires "meaningful" opportunity).

### A. In the Alternative, the "Remand" Remedy Proved Ineffective and Hollow

Even if a remand for a bond hearing were a permissible remedy for a void detention, the resulting proceeding was a procedural sham. The Immigration Judge (IJ) did not merely commit a factual error; he violated the Mandate Rule. In the Sixth Circuit, an inferior tribunal "must implement both the letter and the spirit of the mandate, taking into account the [higher] court's opinion and the circumstances it embraces." *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 549 (6th Cir. 2004). The IJ's initial, on-the-record repudiation of jurisdiction—citing out-of-circuit law to override the District Court's specific habeas mandate —was a direct assault on the Law of the Case. *See De Leon Trejo v. Ladwig*, Doc. 37, Exhibit A at 5 (the immigration stated "[t]he court does not have jurisdiction to issue bond today"). The IJ's subsequent "pivot" to a merits denial after counsel's objection does not cure the defect; it confirms that the outcome was predetermined to evade the District Court's authority. *See generally id.*

When the hearing finally proceeded, it functioned as a performance of process rather than a meaningful inquiry. The Government's only piece of evidence in bond proceedings was a Form I-213 that falsely asserted there was "no evidence" of pending relief—a statement directly contradicted by Mr. De Leon's approved Employment Authorization Document and two USCIS VAWA Prima

14

Facie Determinations. *Compare De Leon*, Doc. 33, Exhibit A at 107-08 *with id.*, Doc. 37, Exhibit B at 16-19. While an I-213 is generally presumed reliable, that presumption is rebutted where, as here, the form is plainly contradicted by the record. *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 680-81 (9th Cir. 2005). Using a known-to-be-false record to maintain a deprivation of liberty is a *per se* violation of fundamental fairness. *Mathews*, 424 U.S. at 333.

This factual error was compounded by the IJ's total disregard for overwhelming "anchor" evidence that rendered a flight-risk finding irrational: Mr. De Leon's 25-year residency, his three U.S. citizen children, and his February 2025 payoff of a $226,936.18 mortgage. *De Leon*, Doc. 33, Ex. A at 46-60. To conclude that a person with such profound financial roots and a history of voluntary compliance is a flight risk for whom "no amount of bond" would suffice is an irrational abuse of discretion. *See, e.g.*, *Matter of Adeniji*, 22 I&N Dec. 1102, 1113 (BIA 1999). Additionally, the Respondents are engaged in a form of administrative friendly fire that violates the *Accardi* doctrine, which dictates that administrative agencies must follow their own regulations, policies, and procedures. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). While USCIS has vetted Mr. De Leon and found him compliant and that he has met his prima facie case for potential permanent residency, ICE persists in a "split personality" litigation strategy that treats these findings as non-existent.

15

Finally, the IJ's reliance on a factually erroneous I-213 while ignoring Mr. De Leon's affirmative history of compliance constitutes a clear abuse of discretion. The record shows that Mr. De Leon did not hide in the shadows; he voluntarily presented himself for processing and biometrics in December 2024 as part of his legal quest for status. *De Leon*, Doc. 33, Exhibit A at 153-55. When an individual actively participates in the legal process to secure his future, his "incentive to appear" is at its strongest. *Matter of Adeniji*, 22 I&N Dec. 1102, 1113 (BIA 1999). No reasonable adjudicator, looking at a vetted survivor of abuse with millions of dollars in taxed, legitimate business assets and a history of voluntary appearances, could conclude that "no amount of bond" would ensure his presence.

## B. The Binding Nature of Judicial Admissions in the Sixth Circuit

One of the most egregious errors in the underlying proceeding was the agency's and the District Court's total disregard for the judicial admission made by DHS Counsel Erica Fitzhugh-Tollette. During the bond hearing, she stated: "I would just request a high bond … to secure his presence in court." *De Leon*, Doc. 37, Exhibit A at 4. This statement is not a mere suggestion; it is a formal, binding concession by the representative of the sovereign that Mr. De Leon is not a flight risk that requires physical incarceration. *Borror Property Management LLC v. Oro Karric North LLC,* 979 F.3d 491, 495 (6th Cir. 2020).

### a. The *Borror* Doctrine and Legal Finality

16

In the Sixth Circuit, the doctrine of judicial admissions is strictly applied to ensure the integrity of the litigation process. In *Borror*, this Court held that an attorney's statement qualifies as a binding judicial admission when it is "deliberate, clear, and unambiguous." 979 F.3d at 495 (quoting *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997). The statement by DHS Counsel meets this standard precisely. It was made on the record, in open court, during a hearing specifically focused on the risk of flight and danger to the community. A judicial admission has the effect of withdrawing a fact from issue, obviating the need for the opposing party to prove it. *Ferguson v. Neighborhood Hous. Servs. of Am., Inc.*, 780 F.2d 549, 551 (6th Cir. 1986) (citing *Seven-Up Bottling Co. v. Seven-Up Co.*, 420 F. Supp. 1246, 1251 (E.D. Mo. 1976), *aff'd*, 561 F.2d 1275 (8th Cir. 1977)).

When DHS Counsel admitted that a bond would "secure his presence," she effectively withdrew the "flight risk" argument as a justification for mandatory detention. The BIA itself has held that when an admission of removability or a factual concession is made by an attorney in a proceeding, that admission is binding on the client. *Matter of Velasquez*, 19 I&N Dec. 377, 382 (BIA 1986). There is no reason this principle should not apply with equal force to the government, particularly when the liberty of an individual is at stake.

### b. Implications of Sovereign Concessions

The government's attempt to retreat from this admission is a violation of the duty of candor and fairness to the tribunal. In administrative law, the government is often given broad discretion, but that discretion does not include the right to take inconsistent positions across different venues to maintain a deprivation of liberty. If the government's legal representative acknowledges that a monetary condition is sufficient to protect the sovereign's interest in Mr. De Leon's appearance, then the "special justification" required for continued detention evaporates. *Ly v. Hansen*, 351 F.3d at 273.

The Sixth Circuit has held that in immigration proceedings, parties "are bound by the concessions of their attorneys[.]" *Hanna v. Holder*, 740 F.3d 379, 387 (6th Cir. 2014). By ignoring the government's admission, the IJ and the District Court allowed the government to benefit from a strategy where it could concede the lack of flight risk while simultaneously moving to keep Mr. De Leon in a jail cell. This Court must hold the government to its word. *Id*.

## V. *MATHEWS V. ELDRIDGE*: THE "MEANINGFUL MANNER" REQUIREMENT

The Due Process Clause of the Fifth Amendment guarantees that no person shall be deprived of liberty without an opportunity to be heard in a "meaningful manner." *Mathews*, 424 U.S. at 333. Under the three-part balancing test established in *Mathews v. Eldridge*, a court must weigh: (1) the private interest at stake; (2) the

risk of an erroneous deprivation of such interest; and (3) the government's interest, including administrative burdens. *Id.* at 335. In the case of Mr. De Leon, all three factors point toward the unconstitutionality of the bond hearing and the necessity of immediate release.

### A. The Private Interest: A Vetted Survivor's Liberty

The private interest here is Mr. De Leon's physical liberty—the most fundamental interest protected by the Constitution. *Ly*, 351 F.3d at 273. This interest is further bolstered by Mr. De Leon's status as a "Qualified Alien" under 8 U.S.C. § 1641(c)(1)(B). As a "Qualified Alien," Mr. De Leon has already passed an initial vetting process by USCIS, which found a "prima facie case" of his eligibility for relief. *De Leon*, Doc. 33, Ex. A at 103, 107. His interest in being free to support his legal case and avoid the psychological and physical harms of detention is overwhelming.

Mr. De Leon's private interest is underscored by his exceptional level of assimilation and compliance. As established in the bond evidence, Mr. De Leon is not merely a resident, but a pillar of his community who framed the St. Teresa of Kolkata Catholic Church at his own expense. *De Leon*, Doc. 33, Ex. A at 67. His financial ties are equally profound: in February 2025, while his VAWA petition was pending, he paid off a residential mortgage in the amount of $226,936.18—a significant sum that serves as a literal and figurative anchor to the jurisdiction. *De*

19

*Leon*, Doc. 33, Ex. A at 46-60. For an adjudicator to conclude that a person who recently invested a quarter-million dollars in American real estate and who voluntarily appeared for USCIS biometrics in December 2024 is a flight risk is an affront to logic.

### B. The Risk of Erroneous Deprivation via Erroneous Record

The risk of erroneous deprivation reached its zenith when the agency relied on a Form I-213 that was fraudulent on its face. The I-213 asserted there was "no evidence" of pending relief, a statement directly refuted by the existence of a valid Employment Authorization Document and two USCIS VAWA Prima Facie Determinations. Using a known-to-be-false record to satisfy a court-ordered bond hearing is "safeguards theater"—providing the appearance of due process while ensuring the reality of unconstitutional detention. *Mathews*, 424 U.S. at 333. By using this clearly erroneous record to deny bond, the agency ensured an erroneous deprivation of liberty. *Mathews*, *supra*.

### C. The Government's Interest vs. Administrative Integrity

The government has no legitimate interest in detaining an individual based on an evidentiary falsity. While the government has an interest in ensuring that non-citizens appear for their hearings, its own counsel admitted that this interest could be satisfied by a bond. *De Leon*, Doc. 37, Exhibit A at 4. Therefore, there is

no "special justification" that outweighs Mr. De Leon's liberty interest. *Ly v. Hansen*, *supra*.

## VI. THE IRREPARABLE HARM OF UNCONSTITUTIONAL DETENTION

The irreparable harm in this case is not merely the potential for a bad outcome at a future hearing; it is the completed and ongoing injury of an incarceration that has never been authorized by law. Because the original detention under § 1225(b) was void *ab initio*, every minute Mr. De Leon has spent in a cell is a minute of "per se" irreparable injury that no administrative process can retroactively validate. *Elrod v. Burns*, 427 U.S. 347, 373 (1976)

### A. The "Minimal Periods of Time" Doctrine

The Sixth Circuit has repeatedly held that the loss of a fundamental right, "*for even minimal periods of time*, unquestionably constitutes irreparable injury. *Newsom*, 888 F.2d at 378 (emphasis added). This doctrine recognizes that liberty is an intangible and irreplaceable good. In the Sixth Circuit, where a constitutional right is impaired or even threatened, "a finding of irreparable injury is mandated." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

In the case of Mr. De Leon, the harm is not just the physical confinement, but the deprivation of his rights as a "qualified alien" and a survivor of domestic abuse. 8 U.S.C. § 1641(c)(1)(B). Every day spent in detention is a day he is unable

to properly prepare his VAWA case, access the benefits he is entitled to, and rebuild his life after the trauma of abuse. The psychological and professional issues associated with such an experience are profound and permanent.

Notably, the harm in this case is compounded by the ongoing violation of the federal confidentiality mandate codified at 8 U.S.C. § 1367. Respondents are disclosing Mr. De Leon's protected humanitarian status in a public and adversarial forum (i.e. immigration court removal proceedings) to "anyone," which Congress specifically prohibited to prevent the immigration system from being used as a tool of control by abusers. Every day spent in detention is a day he is unable to safely prepare his VAWA case and access the benefits reserved for survivors of abuse under 8 U.S.C. § 1641.

### B. The Per Se Rule in Habeas Proceedings

In the context of a habeas corpus appeal, the requirement for showing irreparable harm is often viewed as intrinsic to the claim itself. If a Mr. De Leon is held in violation of the Constitution, that detention is an ongoing irreparable harm. *Newsom*, 888 F.2d at 378. The District Court's failure to order release—relying instead on a "remedy" that turned out to be a sham—has only exacerbated this injury. The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom. *Harris v. Nelson*, 394 U.S. 286, 291 (1969). Its most distinguished characteristic is that it provides a "**swift** and imperative remedy in all

cases of illegal restraint or confinement." *Fay*, 372 U.S. at 400 (emphasis added); *see also Preiser*, 411 U.S. at 495. To subject a petitioner to the glacial pace of *futile* administrative exhaustion when his detention is already a confirmed legal nullity is to deny the very essence of the Writ.

## VII.  CONCLUSION AND SPECIFIC REQUEST FOR RELIEF

The detention of Ricardo De Leon Trejo is a constitutional harm. The District Court's "remand" remedy failed because the agency was allowed to rely on a fraudulent record and ignore the truth. *De Leon*, Doc. 39. Furthermore, the District Court's March 2 Order erroneously suggested that it had "no authority" to review mixed questions of law and fact, a position rejected by the Supreme Court. *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). The integrity of the federal courts depends on the denial of hollow remedies and the vindication of the fundamental right to liberty. *See Newsom*, 888 F.2d at 378.

Every additional hour Mr. De Leon remains in custody is an irreparable harm that the Sixth Circuit must address. *Id*. The "Great Writ" is not a suggestion—it is a command for liberty. When the Executive Branch attempts to bypass that command through procedural gamesmanship, the Article III courts must respond with clarity and force. *Ly*, *supra*.

The District Court's refusal to interfere with the IJ's decision was based on a misguided sense of deference to the administrative process. *De Leon*, Doc. 39.

When an agency relies on a record it knows to be false to deny a fundamental right, deference is an abdication of the judicial duty. The Sixth Circuit must reassert the principle that Due Process is a substantive guarantee, not a procedural façade. *Mathews v. Eldridge*, 424 U.S. 319 (1976). If the government can "check the box" of a hearing while ignoring judicial admissions and presenting fraudulent evidence, then Article III has lost its teeth. *De Leon*, Doc. 39. This case represents a critical opportunity for this Court to clarify that the judiciary will not tolerate "safeguards theater" as a substitute for the Writ of Habeas Corpus.

**WHEREFORE**, Mr. De Leon respectfully requests that this Court:

1. **Grant this Emergency Motion for Release Pending Appeal** under Federal Rule of Appellate Procedure 8;

2. **Order Mr. De Leon's immediate release** from physical custody on his own recognizance (ROR) or, in the alternative, on a nominal bond of no more than $1,500;

3. **Vacate the District Court's Order** to the extent it finds compliance with the Writ of Habeas Corpus; and

4. **Issue a Stay** of all further administrative detention proceedings pending the final resolution of Case No. 26-5186.

The integrity of the Constitution and the authority of the federal courts depend on the denial of hollow remedies and the vindication of Mr. De Leon's fundamental right to liberty.

Respectfully submitted, this March 24, 2026.

/ s / Aaron Dendy, Esq.
Aaron Dendy, Attorney at Law
DENDY LAW, PLLC
1033 Demonbreun St., Ste. 300
Nashville, TN 37203
(615) 997-0006
aaron@dendy.law
TN BPR# 34210

/ s / Seamus Kelly, Esq.
Seamus Kelly, TN BPR# 32202
David Goldman, TN BPR# 35151
MUSIC CITY LAW, PLLC
1033 Demonbreun St., Ste. 300
Nashville, TN 37203
(615) 200-0682
seamus@musiccityfirm.com
david@musiccityfirm.com

**UNITED STATES COURT OF APPEALS FOR THE
SIXTH CIRCUIT**

**RICARDO DE LEON TREJO
Appellant,**

**v.**

**CHRISTOPHER BULLOCK, et al
Appellee.**

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Mr. De Leon, certifies pursuant to Fed. R. App. P. 27 that this Motion complies with the type-volume limitations because this Motion contains 5187 words and 487 lines including footnotes excluding the parts of the Motion exempted. In addition, this Motion complies with the typeface requirements because this Motion has been prepared in a proportionally spaced typeface using Microsoft Word for Mac version 16.5, Times New Roman font in 14-point size, with footnotes in Times New Roman font 14-point size.

DATED this 24th day of March 2026.

Signed by:  / s / Aaron Dendy
DENDY LAW, PLLC
Counsel for Appellee

**UNITED STATES COURT OF APPEALS FOR THE
SIXTH CIRCUIT**

**RICARDO DE LEON TREJO
Appellant,**

**v.**

**CHRISTOPHER BULLOCK, et al
Appellee.**

**Respondents.**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of March 2026, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record.

DATED this 24th day of March 2026.

Signed by:  / s / Aaron Dendy
DENDY LAW, PLLC
Counsel for Appellant